Case 1:17-cv-00135 Document 68 Filed on 09/25/19 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
September 25, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RICARDO SAUCEDA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 1:17-CV-135 |
| | § | |
| CITY OF SAN BENITO, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION AND ORDER**

Plaintiff Ricardo Sauceda sued Defendants City of San Benito and Officer Hector Lopez after he allegedly suffered injuries when arrested in his front yard. Defendants move for summary judgment as to all claims. (Motion, Doc. 42) For the following reasons, the Court finds the Motion well taken.

**I. Background**

In June 2015, Marco Cortez called the San Benito Police Department to report a complaint. (Cortez Dep., Doc. 42-2, 7:22–25) Officer Hector Lopez received the dispatch call to respond to the complaint, and arrived at the location about five minutes later. (Lopez Dep., Doc. 55-2, 49:1–25 and 52:1–14) He was patrolling by himself at the time. (*Id.* at 49:21–22)

When Lopez arrived, Cortez explained that he was at his grandfather's home, attending a graduation party for one of his sisters. (Cortez Dep., Doc. 42-2, 6:12–20) Cortez had been outside awaiting his wife. (*Id.* at 12:9–13) Sauceda lived across the street and was in the front yard of his own home; both men could see each other. (Cortez Dep., Doc. 55-15, 12:9–25, 13:11–20, 16:12–15, 124:7–23 and 156:2–10) After a short while, Sauceda allegedly asked Cortez, "What are you looking at?", and made offensive gestures, such as grabbing his crotch. (Cortez Dep., Doc. 42-2, 16:12–15, 24:15–20, 33:10–16 and 37:3–7) Cortez told Lopez that he felt offended by Sauceda's words and conduct, and that he was concerned because children were present, so he had called the police. (*Id.* at 23:2–5 and 25:5–11) He conveyed to Lopez that he

"wanted to file a report of Mr. Sauceda's behavior and his actions." (Lopez Dep., Doc. 55-2, 52:4–5)

After this conversation with Cortez, Lopez crossed the street to speak with Sauceda, who remained outside in his front yard. (Cortez Dep., Doc. 42-2, 40:5–13; Lopez Dep., Doc. 55-2, 64:8–24) Sauceda's home had a chain-link fence with a closed entry. (Lopez Dep., Doc. 55-2, 72:9–25) Lopez stood on the sidewalk at the fence's closed entry, with Sauceda standing a few feet away on the other side of the fence. (*Id*. at 72:5–16)

Lopez had turned on his body camera to record his interaction with Sauceda. (Lopez bodycam, Ex. C, Doc. 39) The video captured their exchange, although the audio does not begin for about 30 seconds. (*Id*.) When the audio begins, Sauceda is explaining a history of animosity between him and the neighbor whose home Cortez was visiting. (*Id*. at 0:00:30–0:00:55) The Court finds, based on the video evidence, that the two individuals made the following statements and engaged in the indicated conduct:

| | | |
|---|---|---|
| Lopez: | I need your driver license, sir. |
| Sauceda: | What do you need my driver license for? |
| Lopez: | Because I need to get your information. |
| Sauceda: | No, no I'm not putting in a report. |
| Lopez: | Huh? |
| Sauceda: | I'm not putting in a report. |
| Lopez: | I'm making a report. |
| Sauceda: | For what? What's the problem? |
| Lopez: | I'm making a report. |
| Sauceda: | What's the problem? |
| Lopez: | Here's the thing, brother. |

| | |
|---|---|
| Sauceda: | You got a camera. You think I'm doing something. I'm not doing anything bad. I'm minding my own business. Ya te dije lo que paso. You don't understand, then. |
| Lopez: | No, this is the thing, I need your information right now. |
| Sauceda: | I'm not giving you anything. (*He turned and began to walk toward his home, taking several steps.*) |
| Lopez: | Yes, you are, brother. |
| Sauceda: | No, sir. |
| Lopez: | (*He began to try to open the gate.*) |
| Sauceda: | (*He turned around and began walking back to the gate, arriving at the gate as he talked.*) [Unclear]. . .my dog. Hey, you're not getting into my house without a search warrant. |
| Lopez: | No, I'm going after you, brother. |
| Sauceda: | Turn on your camera. |
| Lopez: | I have my camera. |

(*Id.* at 0:00:55–0:01:55) Lopez then opened the gate and took a step toward Sauceda. (*Id.* at 0:01:35) Lopez reached for Sauceda, who pushed or slapped away Lopez's hands as he began to walk backward. (*Id.* at 0:01:35–0:01:38) The two took a few steps, until Lopez took hold of either Sauceda's arm, hand, or lapel (the video is unclear), and appears to have pulled Sauceda toward him. (*Id.* at 0:01:42–0:01:46) Sauceda fell to his knees, and a struggle then ensued. (*Id.* at 0:01:46–0:02:50) Lopez subdued Sauceda after some time and handcuffed him. (*Id.* at 0:02:50–0:04:00)

Sauceda submits an affidavit and deposition testimony supporting his allegation that Lopez hit him with his baton repeatedly. (Sauceda Dep., Doc. 55-1, 130:21–25; Sauceda Aff., Doc. 55-16, 2, ¶ 10) Sauceda also submits the affidavit of Jaime Salas, who states that he witnessed the arrest, and that Lopez "barge[d] into Sauceda's property and sw[u]ng his baton." (Salas Aff., Doc. 55-14, ¶ 3) Although the Court views the summary judgment evidence in the light most favorable to Sauceda as the non-movant, "when there is a videotape that discredits

the non-movant's description of facts," the Court can accept "the facts in the light depicted by the videotape." *Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). The Court finds that Lopez's bodycam video unambiguously establishes that he never struck Sauceda with a baton. At one point, Lopez pulled out his baton and swung it to the side to extend it to its full length. (Video Sauceda Arrest, Ex. A-4, Doc. 39, 0:00:20–0:00:51) The bodycam video does not show this movement, but a parallel video that Cortez recorded on his cellphone does. (*Id.* at 0:00:20–0:00:51) Neither video shows Lopez striking Sauceda. (*Id.*; Lopez bodycam, Ex. C, Doc. 39, 0:01:45–0:04:45) And while portions of the bodycam video are obscured when Lopez reached for his radio transmitter, the sound continues. (Lopez bodycam, Ex. C, Doc. 39, 0:01:45–0:04:45) At no point does the bodycam video include any sound suggesting the striking of Sauceda. (*Id.* at 0:01:45–0:04:45) As a result, to the extent that the proposed summary judgment evidence conveys that Lopez struck Sauceda with the baton, the Court will disregard that evidence. No reasonable juror could find that Lopez struck Sauceda with his baton.[1]

## II. Standards of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine dispute of material fact exists, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine dispute over material facts exists if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," and the fact at issue might affect the

---

[1] Each side has filed a motion to strike certain exhibits submitted by the opposing party. (*See* Defendants' Motion to Strike Plaintiff Ricardo Sauceda's and Witness Ricardo Perez, Jr.'s Changes to Depositions (Errata Sheets) (Doc. 57); Plaintiff Ricardo Sauceda's Motion to Strike Defendants' Exhibit K to Defendants' Motion for Summary Judgment and Exhibit M to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment; (Margo Frasier's Report) From the Summary Judgment Record (Doc. 59)) Both of these Motions are **DENIED**. In his Response to the summary judgment motion, Sauceda also includes objections to the Defendants' summary judgment evidence. (*See* Plaintiff Ricardo Sauceda's Response in Opposition to Defendants' Motion for Summary Judgment and Brief In Support, Doc. 55, ¶¶ 119-121) The Court overrules those objections. The Court indicates in this Opinion and Order the portions of the submitted summary judgment evidence found to be discredited by the video evidence.

outcome of the case. *Anderson v. Liberty Lobby, Inc.* 47 U.S. 242, 248, 250 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). All facts and inferences drawn from those facts must be viewed in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

If this evidence is provided, the burden then shifts to the responding party to present affirmative evidence to defeat the motion. *Anderson,* 477 U.S. at 257. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). "Unsubstantiated assertions, improbable inferences, and unsupported speculation, however, are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (internal quotation marks omitted).

In considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P 56(c)(3). Moreover, even if the moving party satisfies its burden, a court may deny its motion if it believes that "the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

**III. Analysis**

Sauceda advances three causes of action: claims under 42 U.S.C. § 1983 for excessive force and unlawful arrest under the Fourth Amendment, and a negligence claim under the Texas Tort Claims Act. (Amend. Pet., Doc. 1-1, 4–6) He sues Lopez in his individual and official capacity, and he alleges that the City of San Benito is liable for the constitutional violations based on the City's failure to train and supervise Lopez. (*Id.* at 6–7) Defendants move to summarily dismiss these claims.

### A. Fourth Amendment

#### 1. Unlawful Arrest[2]

Sauceda contends that Lopez unlawfully arrested him in violation of his Fourth Amendment rights, supporting his claim under 42 U.S.C. § 1983. Defendants respond that Lopez had many grounds of probable cause to justify Sauceda's arrest.

It is undisputed that Lopez arrested Sauceda in his front yard without a warrant. "[L]aw enforcement officers may enter upon private property to make warrantless arrests, provided the arrest is based on probable cause and the person is in plain view." *United States v. Varkonyi*, 645 F.2d 453, 457 (5th Cir. 1981) (citing *United States v. Santana*, 427 U.S. 38, 42 (1976)) (internal quotation marks omitted). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine,* 80 F.3d 129, 132 (5th Cir. 1996) (emphasis added).

In cases involving several charges against the arrested individual, "[i]f there was probable cause for any of the charges made. . .then the *arrest* was supported by probable cause." *Wells v. Booner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis in original); *see also Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (holding that the officer had probable cause to arrest the plaintiff for resisting arrest, rendering unnecessary the need to reach whether probable cause existed for attempted assault or interference with public duties).

Defendants contend that probable cause existed for five separate crimes: (1) disorderly conduct, (2) failure to identify, (3) resisting arrest, (4) evading arrest, and (5) assault on a public servant. If Lopez possessed probable cause to arrest Sauceda for any of these crimes, then Lopez made a lawful arrest.

---

[2] Defendants argue in their Motion that Sauceda has no viable claim for unlawful detention. (Motion, Doc. 42, ¶ 5.08–5.15) Sauceda, however, does not assert a cause of action for unlawful detention, but solely for unlawful arrest. As a result, Defendants' arguments on this point are moot.

6 / 17

Based on the summary judgment record, the Court finds that Lopez had probable cause to arrest Sauceda for resisting arrest. Under Texas law, a person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer. . . .from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer." Tex. Penal Code Ann. § 38.03(a) (1994); *see also Alexander v. City of Round Rock*, 854 F.3d 298, 305–06 (5th Cir. 2017). "[W]hen a defendant thrashes his arms and legs and is combative towards an officer, he forcefully resists arrest." *Sartain v. State*, 228 S.W.3d 416, 424–25 (Tex. App.—Fort Worth 2007 pet. ref'd); *see Finley v. State*, 449 S.W.3d 145, 150–51 (Tex. App.—Austin 2014), *aff'd*, 484 S.W.3d 926 (Tex. Crim. App. 2016) (concluding that forcefully pulling away from an officer so he could not handcuff the suspect constituted resisting arrest); *Torres v. State,* 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.) (hitting an officer's hand away constituted resisting arrest). In the context of determining whether probable cause exists to arrest an individual for resisting arrest, "[i]t is no defense . . . that the arrest or search was unlawful." Tex. Penal Code Ann. § 38.03(b) (1994). In other words, even if an officer initiates an unlawful arrest, if the individual resists, the officer can proceed with a lawful arrest for violating Section 38.03.

Based on the totality of the facts and circumstances known to Lopez, he possessed probable cause to arrest Sauceda for resisting arrest. The video evidence shows that when Sauceda began to walk toward his house, Lopez started to open the gate. Sauceda began to walk back toward the gate, saying, "Hey, you're not getting into my house without a search warrant." (Lopez bodycam, Ex. C, Doc. 39, 0:01:26–0:01:31) Lopez responded, "No, I am coming after you, brother", and continued to open the gate. (*Id.* at 0:01:30–0:01:36) After opening the gate, Lopez reached for Sauceda, who batted his hands away. Lopez uttered, "You're going to come with me, brother", while Sauceda walked backward toward his home, continuing to slap away

Lopez's hands. (*Id.* at 0:01:35–0:01:40) Ultimately, Lopez grabbed Sauceda's hand, arm, or lapel, and the arrest occurred.

Although Sauceda suggests that he did not know he was under arrest, an officer need not state that the individual is under arrest. *See Ramirez*, 716 F.3d at 372, 376 (implying that a phrase such as "turn around and put your hands behind your back" and grabbing the suspect's hand was enough to put the person on notice that they were under arrest). Sauceda reasonably understood that he was under arrest when Lopez stated, "No, I am going after you, brother", and opened the gate. (Lopez bodycam, Ex. C, Doc. 39, 0:01:26–0:01:33) Sauceda claims he believed Lopez was entering the yard to assault him. But the video evidence belies such an interpretation. No reasonable juror could find that Lopez's statement could be construed as a threat to physically assault Sauceda.

As soon as Lopez reached for Sauceda, he began to repeatedly slap away Lopez's hands as he walked backward, even as Lopez clarified, "You're going to come with me, brother." (*Id.* at 0:01:35–0:01:38) Sauceda's conduct sufficed to allow a reasonable officer to conclude that Sauceda was resisting arrest under Texas law. *See Sartain*, 228 S.W.3d at 424–25. As a result, Lopez possessed probable cause to arrest Sauceda.

The summary judgment evidence also refutes Sauceda's argument that he acted in self-defense to Lopez's excessive force. The Texas Penal Code does include a provision that allows individuals to use force to resist an arrest if:

> (1) . . .before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and
>
> (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

Tex. Penal Code Ann. § 9.31(c) (2007). This provision applies only if the peace officer uses or attempts to use greater force than necessary *before* the actor offers any resistance. Here,

Sauceda began to resist when Lopez merely reached out to initiate the arrest. The mere reaching out to take hold of an individual cannot constitute "greater force than necessary to make the arrest", especially when the suspect is walking away from the officer. *Id.*; s*ee Ramirez*, 716 F.3d at 376–77 (concluding that the use of a taser after the suspect tried to pull away from the officer did not constitute greater force than necessary to make the arrest). Even viewing the video evidence in the light most favorable to Sauceda, no reasonable juror could conclude that before Sauceda offered resistance, Lopez used or attempted to use greater force than necessary to arrest Sauceda. As a result, Section 9.31(c) does not justify Sauceda's conduct.

Having concluded that Lopez possessed probable cause to arrest Sauceda for resisting arrest, the Court need not reach whether probable cause existed for the remaining crimes on which Defendants rely.

### 2. Excessive Force

Sauceda also alleges that Lopez used excessive force when conducting the arrest. This claim is independent of whether Lopez lawfully arrested Sauceda.

"The Fourth Amendment's protection against unreasonable search and seizure requires that officers refrain from using excessive force, that is, more force than is reasonably necessary, when effectuating an arrest." *United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004). "It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Id.* (quoting *Bazan v. Hidalgo County,* 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted)).

"The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Resolving whether force was clearly excessive and objectively unreasonable are often

intertwined inquiries. *Poole v. City of Shreveport*, 691 F.3d 624, 628–29 (5th Cir. 2012). Factors that are considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). When a person engages in verbal and physical resistance to an arrest, he poses an immediate threat to officers. *Poole*, 691 F.3d at 629. And as the *Graham* factors contemplate, a suspect resisting arrest typically increases the force that the officer must reasonably employ to conduct the arrest. *See Ramirez*, 716 F.3d at 378. These factors are assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396–97.

In the current matter, as to the element of injury, Sauceda presents summary judgment evidence revealing that following the arrest, he was taken to a medical center and diagnosed with a neck sprain, a back sprain, and a contusion. (Sauceda Dep., Doc. 55-1, 161–162) This evidence suffices to create a fact issue as to the alleged injury.

But Sauceda fails to create a fact issue as to the remaining elements of the analysis. It is true that Lopez initiated the arrest for crimes of minor severity. As applied here, the disorderly conduct and failure to identify charge could only rise to the level of a Class C misdemeanor. Tex. Penal Code Ann. § 38.02(c)(1) (2003), § 42.01(d) (2013).[3] Class C misdemeanors are minor offenses, which suggests less force should be used. *Trammel v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (noting Class C misdemeanors qualify as minor offenses).

But Sauceda's resistance elevated the criminal conduct and increased the force that Lopez reasonably required to secure the arrest. The video shows that Lopez mainly employed open-hand techniques when approaching Lopez. Lopez did bring Sauceda to the ground, but Sauceda immediately turned onto his back and began to swing at Lopez, throwing open-hand slaps and swinging his elbows. Sauceda struggled with Lopez and refused to provide his hands

---

[3] Defendants argue that Section 38.02(b) applies to Sauceda, which would render his offense a Class B misdemeanor. Tex. Penal Code Ann. § 38.02(b), § 38.02(c)(2) (2003). That said, a plain reading of Section 38.02 demonstrates that Sauceda could not have violated Section 38.02(b) under the present facts.

to be handcuffed.  This summary judgment evidence shows that the force Lopez used responded directly to Sauceda's resistance.  No reasonable juror could reach a different conclusion based on the video evidence.[4]  Applying the *Graham* factors, the Court finds that the summary judgment record conclusively establishes that Lopez did not exercise excessive force when arresting Lopez.

### B. Qualified Immunity

Lopez argues that even if a fact issue existed about whether he arrested Sauceda unlawfully or used excessive force, he still receives protection from the doctrine of qualified immunity.

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995), *cert denied*, 517 U.S. 1191, (1996) (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)).  Revocation "of qualified immunity is properly the exception, not the rule." *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).  Once the defendant officer has pled the defense, the "burden of negating the defense lies with the plaintiff." *Id*.  "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (quoting *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir. 1997) (internal quotation marks omitted)).

A qualified immunity analysis requires a two-step process.  The first question revolves around "whether the plaintiff has allege[d] the violation of a clearly established constitutional right." *Foster*, 28 F.3d at 428 (quoting *Rankin v. Klevenhagen,* 5 F.3d 103, 105 (5th Cir. 1993)).  An officer "cannot be said to have violated a clearly established right unless the right's contours

---

[4] Sauceda submits an expert's opinions that Lopez used excessive force.  (Perez Aff., Doc 55-13)  Although Ricardo Perez, Jr. is amply qualified, the Court finds that the video evidence discredits Perez's interpretation of the summary judgment facts.  Thus, the Court disregards the expert's opinions and finds that this evidence does not create a fact issue.

were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) *(*quoting *Plumhoff v. Rickard,* 572 U.S. 765, 778 (2014)). Second, the court determines whether the defendant's conduct was objectively reasonable. *Foster*, 28 F.3d at 428 (quoting *Rankin,* 5 F.3d at 105 (citations and internal quotation marks omitted)). "Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as 'clearly established law' in effect at the time of the official's actions." *Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)). An officer is "entitled to qualified immunity unless there was no actual probable cause for the arrest and [he was] objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017), as revised (Mar. 31, 2017).

In this case, Sauceda alleges a violation of a clearly established constitutional right—i.e., his Fourth Amendment right to be free from unlawful arrest and the use of excessive force. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *Eugene*, 65 F.3d at 1305. But Sauceda fails to create a fact issue as to whether Lopez's conduct was objectively unreasonable. The Court has found that Lopez possessed probable cause to arrest Sauceda for resisting arrest, and that Lopez did not use excessive force when conducting the arrest. These findings necessarily negate a conclusion that Lopez acted in an objectively unreasonable manner.

### C. Municipal Liability

Sauceda alleges that the City of San Benito is also liable for his injuries. When a plaintiff asserts a Section 1983 claim against a municipality, the plaintiff must allege three elements: (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" was the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).[5]

---

[5] At the summary judgment hearing, the parties agreed that the City Commission is the relevant policymaker.

For municipal liability, an official policy may be a formal written document, or one created through custom and practice. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). As to the former, the policy statement must be "officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Id.* "[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24 (1988). The second avenue requires a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett*, 735 F.2d at 862.

Here, the lack of an official policy is dispositive. Sauceda argues that a "formal governmental policy" led to the alleged constitutional violations. (Pl. Response, Doc. 55, 42). But he provides no summary judgment evidence identifying this policy or the policymaker's ratification or adoption of such a policy. At best, Sauceda points to Lieutenant Martin Morales, Jr.'s testimony that police officers can arrest individuals who refuse to provide a driver's license upon request. (Morales Dep., Doc. 55-21, 76:25–77:6) But Sauceda provides no evidence that a policy along those lines existed. And he presents no summary judgment evidence even suggesting that a policymaker adopted or otherwise ratified such a policy.

Sauceda also cannot rely on an alleged pattern and custom to survive summary judgment, mainly because he does not allege such a pattern or custom. A pattern of conduct must be "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Bennett*, 735 F.2d at 862. "A pattern requires sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850–51 (5th Cir. 2009) (quoting *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989) (internal

quotation marks omitted)) (explaining that "the 27 complaints on which Peterson relies were insufficient to establish a pattern of excessive force"). Sauceda does not allege such a pattern and custom, and provides no summary judgment evidence that would support such a claim. The conduct by Lopez in a single incident, even if it did violate Sauceda's constitutional rights, could not by itself support municipal liability based on a theory of custom and practice. *See Sanchez v. Young Cty.*, Texas, 866 F.3d 274, 280 (5th Cir. 2017), *cert. denied* sub nom., 139 S. Ct. 126 (2018) ("A municipality is almost never liable for an isolated unconstitutional action on the part of an employee."); *Pineda v. City of Houston,* 291 F.3d 325 (5th Cir. 2002) (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry).

### D. Failure to Train and Supervise

Sauceda also contends that the City should be liable for Lopez's actions because it failed to provide sufficient training and supervision.

"In order to hold a municipality liable under § 1983 for its employees' acts, a plaintiff must show that a policy of hiring or training caused those acts." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). "Such a showing requires proof that (1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 385–87 (1989); *Benavides v. County of Wilson,* 955 F.2d 968, 972 (5th Cir. 1992)).

"A municipality's culpability for a deprivation of rights is at its most tenuous" when a § 1983 claim is based on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This difficulty in part arises from the need for the plaintiff to show the policymaker's deliberate indifference. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Liability attaches

when the failure to train or supervise "reflects a municipality's deliberate or conscious choice" such that the choice is a policy. *Canton*, 489 U.S. at 389 (internal quotation marks omitted).

A plaintiff can show the policymaker's deliberate indifference under a failure-to-train theory in two manners. First, the plaintiff can allege that the municipal employees violated the plaintiff's constitutional rights so often that a "factfinder can infer from the pattern of violations that the need for further training must have been plainly obvious to the . . . policymakers." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *Canton*, 489 U.S. at 390 n.10) (internal quotation marks omitted). Second, a factfinder can infer deliberate indifference if "the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). This second situation exists when, "in light of the duties assigned to the specific [employees], the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers. . .can reasonably be said to have been deliberately indifferent to the need." *Littell*, 894 F.3d at 624 (quoting *Canton*, 489 U.S. at 390).

In the Fifth Circuit, when a plaintiff advances a failure-to-train claim based on one alleged incident of wrongful conduct, the standard to show liability is elevated. *See Littell*, 894 F.3d at 624–25. The "single-incident method of proving deliberate indifference" is "generally reserved" for cases in which "no training whatsoever" occurred. *Id.* at 625 n.5 (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)). A plaintiff who alleges that a municipality offered some, but not enough training typically cannot advance the claim. For example, in *Peña*, the Fifth Circuit affirmed dismissal of the plaintiff's failure-to-train cause of action because the Complaint acknowledged that the police officers received some training, suggesting that the allegations did not "satisfy the exacting test for the narrow single-incident exception." *Peña*, 879 F.3d at 624.

In this matter, Sauceda does not create a fact issue as to any of the elements related to a failure to train and supervise claim. He bases the cause of action on one incident—Lopez's arrest of Sauceda. Defendants respond with ample summary judgment evidence showing that Lopez received substantial training. He attended the Police Academy and graduated with his Texas Peace Officer's Certificate. (Lopez Dep., Doc. 42-4, 16:13–19, 18:14–16 and 220:1–3). He received at least 40 hours of continuing education or training annually. (*Id.* at 218:11–25 and 219; Personal Status Report, Doc. 42-4) Those courses included, among others, materials on defensive tactics, arrest, search and seizure, baton training, and the use of force. (Lopez Dep., Doc. 42-4, 222:7–224:3; Personal Status Report, Doc. 42-4) Given this evidence, Sauceda's argument that Lopez received inadequate training and supervision is untenable under current caselaw.

### E. Texas Tort Claims Act (TTCA)

Sauceda alleges a cause of action under the Texas Tort Claims Act. (Amend. Pet., Doc. 1-1, 4–5) At the summary judgment hearing, however, Sauceda's counsel conveyed his agreement to withdraw this claim. In any event, Defendants' summary judgment motion would prevail on this issue.

Under the TTCA, the state has waived its sovereign immunity under certain conditions. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). But the TTCA does not waive the state's sovereign immunity for intentional torts. Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (1985). In this matter, Sauceda alleges a claim for excessive force, in part based on the allegation that Lopez struck him repeatedly with his baton. (Amend. Pet., Doc. 1-1, 4) Based on those allegations, the claim invokes battery rather than negligence, whether the alleged excessive force was intended or not. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex.

2014). As battery is an intentional tort, Sauceda could not sue under the TTCA. As a result, the City of San Benito retains sovereign immunity as to this claim.[6]

## IV. Conclusion

For these reasons, it is:

**ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 42) is **GRANTED**.

SIGNED this 25th day of September, 2019.

_____
Fernando Rodriguez, Jr.
United States District Judge

---

[6] In addition, even if the TTCA permitted such a claim, the Court has found that the summary judgment evidence conclusively establishes that Lopez never struck Sauceda with his baton. The City would be entitled to summary judgment based on this finding.